BENET POLIKOFF, RECEIVER OF SHIELDS FURNITURE COMPANY, v.
FINANCE SERVICE COMPANY.

(Filed 10 January, 1934.)

1. **Usury A b—Findings in this case held sufficient to support judgment that plaintiff recover twice the amount of usury paid.**

Where in sustaining an exception to the referee's finding that the contract in question was governed by the laws of another state, the court finds that the stipulation in the contract that the laws of such other state should apply was made in bad faith for the purpose of evading the usury laws of this State, and that defendant charged and received payment of usurious interest, the findings are sufficient to support a judgment in plaintiff's favor that he recover of defendant twice the amount of usurious interest paid as determined by the laws of this State. C. S., 2306.

2. **States A a—Stipulation that contract is governed by laws of another state is void where it is made in bad faith to avoid usury laws.**

Where a contract for the loan of money stipulates that the laws of another state should govern, and such stipulation is inserted in the contract in bad faith in order to evade the usury laws of this State, our courts will disregard the stipulation and apply the provisions of our laws in an action by the borrower to recover twice the amount of usury charged and received, and the evidence in this case is held sufficient to support a finding of bad faith.

3. **Reference C a—**

The trial court may overrule a finding by the referee upon exceptions duly taken, and make additional findings in regard to the matter, and base an adverse conclusion of law thereon.

4. **Usury A a — In determining whether contract is usurious, the courts will look to its substance and not its form.**

In construing a contract in reference to usury the courts will look to its substance and not to its form, and a contract will be declared usurious when it appears that it was the purpose and intent of the lender to charge and receive a greater rate of interest than that allowed by law. C. S., 2305.

APPEAL by defendant from *Clement, J.,* at October Term, 1933, of Forsyth. Affirmed.

The judgment in the Forsyth County Court is as follows:

"This cause coming on to be heard before his Honor, Oscar O. Efird, judge presiding at the 12 June, 1933, term of the Forsyth County Court, and being heard upon the report of Honorable H. R. Starbuck, referee heretofore appointed by this court, and.upon the exceptions to the report filed by both the plaintiff and the defendant as appears of record and the court, after careful consideration of the evidence taken before the

referee and the exceptions signed by both the plaintiff and the defend-
ant, and after hearing and considering the arguments and briefs of
counsel, the court being of the opinion that the exceptions Nos. 1, 2
and 3 filed by the defendant should be and the same are hereby over-
ruled, and that exceptions 1, 2, 3 and 5 assigned by the plaintiff should
be, and they are hereby overruled, except as hereinafter modified, and
being of the further opinion that the fourth assignment of error of
the plaintiff should be and the same is hereby sustained, and the court
being of the further opinion, and so finds, that the contracts are gov-
erned by the laws of the State of North Carolina, and that the plaintiff
is entitled to recover and that the laws of Maryland do not control for
the reason that the stipulation that the laws of Maryland should apply
was made for the purpose and with the intent of evading the usury
laws of the State of North Carolina, and, except as herein modified,
the report of the referee is affirmed.

Now, therefore, upon motion of Fred. S. Hutchins, attorney for the
plaintiff, it is considered, ordered, adjudged and decreed that the plain-
tiff recover judgment against the defendant in the sum of $2,711.00, as
penalty for usury as provided by the laws of North Carolina, with
interest thereon from 13 March, 1929, the date of the institution of the
said suit, and for the cost of the court to be taxed by the clerk, including
an allowance of $100.00 to be paid H. R. Starbuck, referee.

It is further ordered, adjudged and decreed, that the plaintiff recover
judgment against the bondsman, the Maryland Casualty Company, on
its undertaking on the discharge of the attachment in the sum of $3,000
to be discharged upon the payment of the amount of this judgment in-
cluding all the cost taxed herein against the defendant."

The defendant made numerous exceptions and assignments of error
and appealed to the Superior Court. The judgment in that court is
as follows:

"This cause coming on to be heard and being heard before his Honor,
J. H. Clement, judge presiding at the October Term, 1933, of the
Superior Court of Forsyth County, on appeal from the judgment of
the Forsyth County Court, and it having been agreed between counsel
for the plaintiff and defendant, that this judgment should be rendered
out of term, *nunc pro lunc,* and after argument of counsel and con-
sideration of the record, the court being of the opinion that the assign-
ments of error of the defendant from one to six inclusive are without
merit and should be overruled, and that the judgment of the county
court should be affirmed.

Now, therefore, upon motion of Fred S. Hutchins, attorney for the
plaintiff, it is ordered and decreed that the assignments of error from
one to six of the defendant, appellant, are without merit and should

be and are hereby overruled and that the judgment of the county court should be and the same is hereby affirmed with the cost of the appeal to be taxed against the defendant. And this cause is remanded to the Forsyth County Court in accordance with this opinion."

The defendant appealed from this judgment to the Supreme Court. The necessary exception and assignment of error for a decision of the controversy will be set forth in the opinion.

*Fred S. Hutchins and H. Bryce Parker for plaintiff.*
*Parrish & Deal for defendants.*

CLARKSON, J. The only exception and assignment of error that we think necessary to consider as determinative of this controversy is as follows: "That the Forsyth County Court erred in overruling the defendant's motion that the action be dismissed, for that the evidence introduced by the plaintiff does not make out a cause of action, and to the entry of the judgment appearing in record." We see no error in the ruling of the Forsyth County Court, which was affirmed on appeal to the Superior Court. The Forsyth County Court in its judgment found: "And being of the further opinion that the fourth assignment of error of the plaintiff should be and the same is hereby sustained, and the court being of the further opinion, and so finds, that the contracts are governed by the laws of the State of North Carolina, and that the plaintiff is entitled to recover and that the laws of Maryland do not control for the reason that the stipulation that the laws of Maryland should apply was made for the purpose and with the intent of evading the usury laws of the State of North Carolina.

The fourth assignment of error of plaintiff, sustained by the Forsyth County Court, and affirmed on appeal to the Superior Court, is as follows: "Fourth exception—That the referee found as a conclusion of law that the contracts are governed by the laws of the State of Maryland and, therefore, that the plaintiff is not entitled to recover as set out in the referee's conclusion of law No. 2: Whereas, he should have found that the contracts are governed by the laws of the State of North Carolina, and that the plaintiff is entitled to recover and that the laws of Maryland do not apply *for the reason that the contract stipulation that the law of Maryland should apply is in bad faith and for the purpose and intent of evading the usury laws of the State of North Carolina.*" (Italics ours.)

In *Bundy v. Credit Co.,* 200 N. C., 511 (515), this Court, quoting from *Zimmerman v. Brown,* 166 Pac., 924, says: "By the great weight of authority it is held that, in a case like the present one, every presumption is against an intention to violate the law, so that where notes are

executed in one State and payable in another, the parties will be presumed to have contracted with reference to the law of the place where the transaction would be valid rather than in view of the law by which it would be illegal, provided, however, that there is no evidence of bad faith or of an intention to evade the usury law of the latter State. Therefore, when a contract is usurious by the law of the State wherein it was made, but not according to that of the State wherein it is to be performed, the parties will be presumed to have contracted with reference to the law of the latter State, and the contract will be upheld, subject to the conditions of good faith just set forth."

In *Bundy v. Credit Co.*, 202 N. C., 604 (607), we find: "Bad faith cannot be defined with mathematical precision. The ultimate definition of the term would depend upon the facts and circumstances of a given controversy. Certainly, it implies a false motive or a false purpose, and hence it is a species of fraudulent conduct. Technically, there is, of course, a legal distinction between bad faith and fraud, but for all practical purposes bad faith usually hunts in the fraud pack."

We think that, taking the fourth assignment of error of plaintiff, which was sustained, and the further finding of fact by the judge of the Forsyth County Court, affirmed by the court below, it is sufficient to support the judgment.

In *Abbitt v. Gregory*, 201 N. C., 577 (596), we find: "In *Trust Co. v. Lentz*, 196 N. C., 398 (at page 406), 145 S. E., 776, it is said: 'In view of the position taken by some of the parties that the judge was without authority to change the report of the referee—the reference being by consent—it is sufficient to say that, in a consent reference, as well as in a compulsory one, upon exceptions duly filed, the judge of the Superior Court, in the exercise of his supervisory power and under the statute, may affirm, modify, set aside, make additional findings, and confirm, in whole or in part, or disaffirm the report of a referee. *Contracting Co. v. Power Co.*, 195 N. C., 649, 143 S. E., 241; *Mills v. Realty Co.*, 196 N. C., 223, 145 S. E., 26.'" *Moore v. Brinkley*, 200 N. C., 457; *Wallace v. Benner*, 200 N. C., 124; *Thigpen v. Trust Co.*, 203 N. C., 291 (295).

We think there was sufficient evidence for the court below to find the facts as above set forth. The general principle is thus stated in 53 A. L. R., at p. 746: "The later cases substantiate those cited in the earlier annotation to the effect that a court, in deciding whether or not a transaction is usurious, will disregard its form and look to the substance, and will condemn it if all the requisites of usury are found to be present, despite any disguise it may wear, and that the question of good faith in exacting or receiving a charge which is ostensibly for

an expense of the loan is often a decisive factor in determining whether or not the transaction is usurious," citing *Ripple v. Mortgage Corp.,* 193 N. C., 422.

In *Bank v. Wysong,* 177 N. C., 380 (388) : "This kind of usurious agreement has been cast in various forms, but the courts have invariably stripped it of its flimsy disguise, and decided according to its substance and its necessary tendency and effect, when the purpose and intent of the lender are unmistakable. And this is the correct rule."

In *Bundy v. Credit Co., supra,* at p. 516, it is stated: "The general principle recognized in all jurisdictions is that ordinarily the execution, interpretation and validity of a contract is to be determined by the law of the State or county in which it is made."

In *Ripple v. Mortgage Corp., supra,* at p. 428, the following able instruction by *Oglesby, J.,* to the jury was approved: "Now, gentlemen of the jury, if the place of payment was specified as in the State of Maryland, for the purpose of avoiding the usury laws of North Carolina, and if it were a scheme or method to avoid the usury laws of North Carolina, and that was the reason for the place of payment being provided in Maryland, then your answer to the second issue would be 'No'; that they were not to be performed in Maryland, because if providing the place of payment as Maryland was a scheme to evade and whip around the usury laws of North Carolina, and was not done in good faith, then the place of payment, so far as the law is concerned, would not be in Maryland."

In *Clark v. Bank,* 200 N. C., 635, "The statutory penalty for charging usury is the forfeiture of all interest on the loan; it is only when the borrower had paid usury to the lender of money, that he can recover in a civil action as the statutory penalty for taking and receiving usury, twice the amount paid," citing C. S., 2306, and many authorities.

C. S., 2305, is as follows: "The legal rate of interest shall be six per cent per annum for such time as interest may accrue, and no more."

In *Pugh v. Scarboro,* 200 N. C., 59 (64), we find: "The humanities of all civilized nations has condemned usury, a species of ingenious oppression, especially in this day. It may be well for us to hark back to the Mosaic law, where we find: 'If thy brother be waxen poor, and fallen in decay with thee, then thou shalt relieve him; yea, though he be a stranger, or a sojourner, that he may live with thee. Take thou no usury of him, or increase, but fear thy God, that thy brother may live with thee. Thou shalt not give him thy money upon usury, nor lend him thy vituals for increase.' Lev. xxv, 35-37."

In the present case it was in evidence that the interest charged on different loans, the percentage rate was: 16.58, 16.76, 17.52, 17.62, 17.68,

17.86, 18.00, 18.05, 18.29, 18.35, 19.06, and 20.29. It is a matter of common knowledge that such ·exorbitant usury would naturally cause the company to fail and go into the hands of a receiver, as in the present case. This enormous percentage rate no doubt caused the death of this industrial corporation. The judgment of the court below is
   Affirmed.